UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CARLOS HERNANDEZ, :
Petitioner, :
:
v. : CA 05-427 S
:
STATE OF RHODE ISLAND, :
Respondent. :

REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Before the court is the State of Rhode Island's Motion to Dismiss (Document ("Doc.") #6) ("Motion to Dismiss" or "Motion") the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Doc. #1) (the "Petition") filed by Petitioner Carlos Hernandez ("Petitioner"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Telephonic hearings were conducted on January 4 and 18, 2006. After reviewing the filings, listening to oral argument, and performing independent research, I recommend that the Motion to Dismiss be granted and that the Petition be denied and dismissed.

**Facts and Travel**

The instant Petition was filed on October 13, 2005. That same day, Petitioner filed a Supplement to Petition for a Writ for a Habeas Corpus (Doc. #2) ("Supplement"). Petitioner states that he is currently incarcerated in Connecticut, serving a Connecticut state court sentence. See Petition at 9; Supplement at 1. He alleges that the State of Rhode Island (the "State") has an outstanding warrant for his arrest, see id., which has

been lodged with the Connecticut authorities as a detainer,[1] see Supplement at 2. Petitioner contends that "his current 'detainer' prevents him from participating in any community release programs such as, but not limited to[,] Halfway House, Parole, etc.," id., that "the simple fact that his current detainer is outstanding and prohibits the petitioner to be released on such programs for his ongoing recovery ... is a creation of a 'liberty' interest, which violates his Fourteenth Amendment [rights]," id. According to Petitioner, he "has filed with the State of Connecticut Department of Correction an Interstate Agreement on Detainers," Supplement at 1; see also Petition at 9, and the "prosecuting official(s) [in Rhode Island] has 'failed' to comply with its agreement on detainers in that the State of Rhode Island has not extradited the Petitioner in order that this matter be disposed by its prosecuting official(s)," Supplement at 1; see also Petition at 9. Petitioner requests that this Court "'dismiss' his current State of Rhode Island charges or accept his plea of 'nolo-contendere' in absentia." Petition at 9.

Also on October 13, 2005, Petitioner filed an Application to Proceed without Prepayment of Fees and Affidavit (Doc. #3) ("Application"), which was granted on October 19, 2005, see Order

---

[1] "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." Carchman v. New Jersey Dep't of Corr., 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985); see also Reed v. Farley, 512 U.S. 339, 342 n.1, 114 S.Ct. 2291, 2294 n.1, 129 L.Ed.2d 277 (1994)(same)(quoting Carchman v. New Jersey Dep't of Corr.). "Detainers generally are based on outstanding criminal charges, outstanding parole or probation-violation charges, or additional sentences already imposed against the prisoner." Carchman v. New Jersey Dep't of Corr., 473 U.S. at 719, 105 S.Ct. at 3403.

Granting Application (Doc. #4).[2] Subsequently, the State was directed to file its response to the Petition. See Order of 10/21/05 (Doc. #5). The State filed the instant Motion to Dismiss on November 1, 2005.

The Court conducted a telephonic hearing on January 4, 2006. Through a series of questions, the Court elicited the following information from Petitioner. On November 21, 2000,[3] Petitioner was arrested by the Providence Police Department for breaking and entering a dwelling. See Tape of 1/4/06 hearing; see also Letter from Weisman to Court of 1/12/06, Attachment ("Att.") 1 (Criminal Docket Sheet Report for case number P2-2001-0320A) at 2. He pled nolo contendere to this charge on May 25, 2001, in the Providence County Superior Court. See Letter from Weisman to Court of 1/12/06, Att. 1 at 1, 4-5. He was sentenced to eight years imprisonment, the first six months of which were to be served while the remaining ninety months were suspended and Petitioner would be on probation for ninety months. See id. at 1. The sentence was made retroactive to November 27, 2000. See id. After serving the six months, Petitioner left Rhode Island and went to Connecticut, where he was subsequently incarcerated. See Tape of 1/4/06 hearing. Rhode Island lodged a detainer against him during this time, and, when he completed his Connecticut sentence, he was turned over to Rhode Island authorities in the fall of 2002. See id. Petitioner served approximately thirty days in Rhode Island and then appeared before a judge who stated

---

[2] In granting the Application to Proceed without Prepayment of Fees and Affidavit (Document ("Doc.") #3), the Court cautioned that "this action should not be taken as an indication that the court has determined that the relief Petitioner is seeking is obtainable via a federal habeas corpus petition," Order Granting Application (Doc. #4) at 1 n.1.

[3] At the January 4, 2006, hearing, Petitioner stated that he did not know the date of his arrest, but thought it was in 1999 or 2000. See Tape of 1/4/06 hearing.

that he could resume serving his probation. See Tape of 1/4/06 hearing. Petitioner said that his probation officer[4] told him that he could go to Connecticut, which he did around Christmas of 2002. See id. Petitioner also said that he reported back to Rhode Island for a time, but told his probation officer that it was too far to travel. See id. According to Petitioner, she indicated that he could remain in Connecticut and that she would transfer his probation there, but apparently never did. See id. Petitioner was arrested in Connecticut in 2003 for some type of trespassing offense and served thirty to ninety days in county jail. See id. In December 2004, he was arrested on a drug charge which resulted in his current three-year Connecticut sentence. See id. His discharge date is December 22, 2007. See id. Petitioner stated that he first learned of the current detainer in January of 2005. See id.

Because Petitioner expressed confusion as to the basis for the current warrant and detainer,[5] see id., the Court continued the hearing for two weeks and directed the attorney for the State, Assistant Attorney General Aaron Weisman, to attempt to ascertain the case number which gave rise to the detainer based on the information Petitioner had provided at the hearing, see id. Mr. Weisman was additionally directed to send the Court a letter reporting what he had learned prior to the next scheduled hearing and to send a copy of the letter to Petitioner. See id.

On January 12, 2006, the Court received Mr. Weisman's

---

[4] Petitioner could not remember the name of his probation officer. See Tape of 1/4/06 hearing.

[5] Petitioner stated that he thought the detainer may be for a violation of probation, possibly related to the breaking and entering conviction. See Tape of 1/4/06 hearing. He did not know the case number or date of that charge. See id.

letter, with attached materials,[6] of the same date. See Letter from Weisman to Court of 1/12/06. Mr. Weisman stated that his investigation had determined the following:

> On May 25, 2001, Mr. Hernandez ... pled *nolo contendere* in the Providence County Superior Court to the offense of breaking and entering a dwelling (R.I.G.L. § 11-8-2), and was sentenced to a brief incarcerative term of imprisonment (6 months) to be followed by a ninety-month suspended/probationary sentence. (*Please see* attached materials.) As a consequence of the State's assertion that Mr. Hernandez failed to comply with the technical terms of his probationary sentence, the State issued a violation report and a warrant with respect to Mr. Hernandez. (*Please see* attached materials.) Subsequently, the State notified authorities in Connecticut of the warrant and asked that such information be lodged as a detainer against Mr. Hernandez. (*Please see* attached materials.)

Letter from Weisman to Court of 1/12/06; see also id., Att. 1-6.

The Court conducted a second telephonic hearing on January 18, 2006. Because Petitioner stated that he had not received a copy of Mr. Weisman's Letter to the Court of 1/12/06, the Court read the letter into the record[7] and directed the deputy clerk to mail another copy to Petitioner. See Tape of 1/18/06 hearing.

---

[6] The attachments include copies of: the Criminal Docket Sheet Report for case number P2-2001-0320A, in which Petitioner was charged with breaking and entering a dwelling; a letter dated April 28, 2005, from Matthew S. Dawson, Assistant Attorney General, Criminal Division, to officials at the Hartford Correctional Center notifying them of the pending warrant and asking that it be lodged as a detainer against Petitioner; a warrant issued in P2-2001-0320A on January 26, 2004; a 32(f) Violation Report issued in P2-2001-0320A dated October 28, 2004; a Superior Court Presentment Report from the Rhode Island Department of Corrections, Adult Probation and Parole, requesting a warrant in P2-2001-0320A; and an entry from the Rhode Island Supreme Court Central Registry Case Inquiry Screen dated September 28, 2004, which reflects that Petitioner was directed to furnish proof that he was seeking a job. See Letter from Weisman to Court of 1/12/06, Attachments ("Att.") 1-6.

[7] The Court has directed that Mr. Weisman's letter be marked as 1/18/06 Hearing Exhibit A.

The Court stated that Plaintiff would have twenty-one days from that date to submit any additional filing(s) if he wished to do so after reviewing Mr. Weisman's letter and that, after twenty-one days had passed, the matter would be taken under advisement. See Tape of 1/18/06 hearing. Petitioner has not filed anything since the January 18, 2006, hearing. See Docket.

**Discussion**

Petitioner alleges that the State's prosecuting authorities have failed to comply with the Interstate Agreement on Detainers ("IAD"). See Supplement at 1; Petition at 9. The State argues that "such IAD claims are generally unavailable in habeas proceedings ...," State of Rhode Island's Memorandum in Support of Its Motion to Dismiss Plaintiff's "Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody" ("State's Mem.") at 1, and that, even if properly the subject of a 28 U.S.C. § 2254 petition, Petitioner "has failed to exhaust this IAD claim in the Rhode Island state courts ...," id. at 2 (footnote omitted).

The IAD "is a compact among 48 States, the District of Columbia, and the Federal Government. It enables a participating State to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges." Reed v. Farley, 512 U.S. 339, 341, 114 S.Ct. 2291, 2293, 129 L.Ed.2d 277 (1994); see also 18 U.S.C. App. 2. The IAD

> establishes a procedure by which a prisoner incarcerated in one party State (the sending State) may demand the speedy disposition of any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner by another party State (the receiving State). Specifically, Art[icle] III requires the warden to inform the prisoner that a detainer has been lodged against him and that he may request final disposition of the indictment, information, or complaint upon which the detainer is based. If the prisoner makes such a request, the warden must forward it, together with

> a certificate providing certain information about the prisoner's terms of confinement, to the appropriate prosecuting official and court of the receiving State. The authorities in the receiving State then must bring the prisoner to trial within 180 days, absent good cause shown, or the court must dismiss the indictment, information, or complaint with prejudice, and the detainer will cease to be of any force or effect.

Carchman v. New Jersey Dep't of Corr., 473 U.S. 716, 720-21, 105 S.Ct. 3401, 3403-04, 87 L.Ed.2d 516 (1985)(internal quotation marks and footnote omitted); see also 18 U.S.C. App. 2.

The Court of Appeals for the First Circuit, relying on United States Supreme Court precedent, has held that:

> Although the IAD is considered federal law for purposes of habeas corpus, Reed v. Farley, 512 U.S. 339, [347], 114 S.Ct. 2291, 2296, 129 L.Ed.2d 277 (1994), nonconstitutional claims can be raised on habeas only if the alleged error results in "a complete miscarriage of justice." Id. at [354], 114 S.Ct. at 2300 (citations omitted).

Cross v. Cunningham, 87 F.3d 586, 587-88 (1st Cir. 1996); see also Fasano v. Hall, 615 F.2d 555, 556 (1st Cir. 1980)(finding contention that IAD claims are not cognizable under habeas corpus statute to be correct). Petitioner has not met the "substantial burden," Cross v. Cunningham, 87 F.3d at 588, of demonstrating that the State's alleged noncompliance with the IAD has "result[ed] in 'a complete miscarriage of justice,'" id. (quoting Reed v. Farley, 512 U.S. at 354, 114 S.Ct. at 2300). Indeed, Petitioner cannot meet this burden for two reasons. First, the United States Supreme Court has held that "a detainer based on a probation-violation charge is not a detainer based on 'any untried indictment, information or complaint,' within the meaning of Art[icle] III [of the IAD]." Carchman v. New Jersey Dep't of Corr., 473 U.S. at 726, 105 S.Ct. at 3406. Therefore, the IAD is inapplicable to the instant detainer based on a warrant arising

from an alleged violation of Petitioner's probation. Second, the First Circuit has held that a delay in returning a prisoner to a sending state, which adversely affected his participation in a training program, does not violate the Constitution. See Cross v. Cunningham, 87 F.3d at 588 ("[W]e are satisfied that the delayed return, whatever its propriety under the IAD, did not violate the Constitution .... The delay may well have interfered with Cross' training program and that is regrettable. But the Constitution does not protect against every incidental burden that may by happenstance result from the decision to appeal."). Thus, although it is unfortunate that the detainer "prevents [Petitioner] from participating in any community release programs such as, but not limited to[,] Halfway House, Parole, etc.," Supplement at 2, this Court cannot grant Petitioner the relief he seeks in the Petition, namely to "'dismiss' his current State of Rhode Island charges or accept his plea of 'nolo-contendere' in absentia," Petition at 9.

Turning to the State's argument that Petitioner has not exhausted his state court remedies, see State's Mem. at 1-2, it is true that a state court prisoner normally is required to exhaust his state court remedies prior to bringing an application for a writ of habeas corpus in federal court, see 28 U.S.C. § 2254(b);[8] see also Rose v. Lundy, 455 U.S. 509, 510, 102 S.Ct.

---

[8] Section 2254 provides that:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

1198, 1199, 71 L.Ed.2d 379 (1982).[9] Although Petitioner alleged that he "ha[d] filed with the State of Connecticut Department of Correction an Interstate Agreement on Detainers," Supplement at 1; see also Petition at 9, he clarified at the January 4, 2006, hearing that the only document he had sent to Rhode Island was the instant Petition, see Tape of 1/4/06 hearing; see also Petition at 9-10 (indicating that he had not raised the issue through a post-conviction motion or petition for writ of habeas corpus in state court); id. at 10 (leaving blank space provided to indicate any other procedures used to exhaust state remedies). However, it is not clear, given the Supreme Court's ruling in Carchman v. New Jersey Department of Corrections, that a state court option is available to Petitioner in the instant matter. Nonetheless, Petitioner's remedy lies with state officials, not with the federal court. For example, he could contact the

---

> exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(b).

[9] In Rose v. Lundy, the United States Supreme Court described the exhaustion doctrine as follows:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts [are] equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982)(alteration in original)(internal citations, quotation marks, and footnote omitted).

individuals identified in the attachments to Mr. Weisman's Letter to the Court of 1/12/06--the probation officer who signed the Superior Court Presentment Report dated September 23, 2004, the Special Assistant Attorney General who signed the 32(f) Violation Report (requesting a warrant) dated October 28, 2004, or the Assistant Attorney General who signed the April 28, 2005, letter notifying officials at the Hartford Correctional Center of the existence of the warrant and asking that it be lodged as a detainer--and seek their assistance in resolving the matter. See Letter from Weisman to Court of 1/12/06, Att 1-6.

Based on the foregoing, the Court concludes that the Motion to Dismiss should be granted and that the Petition should be denied and dismissed. I so recommend.

**Conclusion**

I recommend that the Motion to Dismiss be granted and that the Petition be denied and dismissed. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
April 24, 2006